We're prepared to hear a final case, United States v. Jones. Ms. Trodden, go ahead. Thank you. Good morning, Your Honors, and may it please the Court. I'm Erin Trodden on behalf of James Jones. Mr. Jones raised three issues on appeal in this case. As to the first, sufficiency of the evidence, I'd like to stand on the briefing. As to the third, Rogers Singletary error, the government has conceded error and agrees that the proper remand, the proper result is remand for full resentencing. That's on the sentencing issue? That's on the third issue, the Rogers Singletary error in sentencing. But I would like to spend our time today discussing the second sentencing issue, which is the application of 2T1.1b1 and the tax guidelines for income from criminal activity. Should this Court choose to remand, we would ask the Court on remand to clarify the scope of this guideline, and in particular to recognize that it does not apply where the only criminal activity alleged as a requirement for that enhancement is a failure to pay the taxes the defendant was convicted of evading. In other words, where the defendant is convicted of tax evasion, the failure to pay the same taxes that he has been convicted of evading is not a separate criminal activity within the meaning of subsection b1. No cases have applied the guideline that broadly, and the structure and rationale of the guideline itself do not support such an application. So as an initial matter, the government does not dispute that a separate offense is necessary for the application of this guideline, of this enhancement. That's in their briefing in opposition at page 50, but sort of throughout their briefing, they recognize that. The separate offense that the government relies on in this case, at least before this Court, is violation of 7202 of the tax code. The problem is that that section governs failure to pay over required taxes. But that same failure to pay tax forms the basis of... So he withheld from the employees? Yes, yes, Your Honor. Who had the money in his pocket? He withheld the money... The trust money? Yes, the employee trust fund withholding. He... When I was a prosecutor, we used to, we considered that more serious than the tax evasion itself. So it's interesting because in this case, Your Honor, he reported the withholding to the IRS. And so for the purposes of these employees, they actually weren't out anything. Under the IRS guidelines, under the IRS regulations, they are treated as if they get that money. From their perspective, they're not out anything. It's the IRS that's out something. Because they're the ones who are making good on this if the money is not paid over. But count two, the tax evasion count, charges Mr. Jones with willful attempt to evade and defeat the payment of the employment taxes assessed to Lifeline Ambulance Service, as well as the trust fund recovery penalty. Now, the government is arguing that that same failure to pay over those taxes is also separate criminal activity such that this guideline should apply to it. But that's not sufficiently separate. The government argued to the jury, in fact, that this tax deficiency that their tax evasion conviction is based on is this very failure to pay over these taxes. None of the cases that the government cites apply this rationale, this extremely broad rationale. The closest that they come is United States v. Heard, which is the Fifth Circuit case. But Heard is meaningfully different. In Heard, the tax evasion is based on different conduct. Heard skimming money off of his companies and then enriching himself, evading paying taxes on that income. The criminal activity is separate from that tax evasion. It's not, the tax evasion is not based on the conduct that forms that criminal activity. The criminal activity is based on the failure to pay over the trust fund taxes. And so in that sense, Heard is distinguishable. It does not rely on the same conduct in the same way that this case does. Similarly, the district court in this case relied on United States v. Kearney, which is the District of New Mexico, the unpublished District of New Mexico case, distinguishing Heard. Kearney is really, I think Kearney supports Mr. Jones's position here. Kearney is really about two things. One of them is about the definition of income. And that, I think, is a separate issue. In Kearney, the court recognized that those taxes where the defendant failed to pay tax on his own money, that wasn't income to him. But separate from that, Kearney also recognized that no case supported the broad proposition that failing to pay tax on the same taxes that you're then charged with evading gives rise to the application of this enhancement. And I think that is squarely on point for this issue here. The rationale of 2T1.1B1 similarly supports this reading of the guideline, Mr. Jones's reading of the guideline. So we know what criminal activity is intended to be reached by the background to the guideline. The background in that states that this enhancement is included for deterrence purposes, because this kind of income is generally difficult to establish because the tax loss in such cases will tend to be substantially understated. In other words, in cases where a defendant has income from criminal activity, from as in prostitution, as in the Fairchild case, or as in fraud or something else, it can be very difficult to ascertain what the tax loss is. And so this two-level enhancement is intended to be a proxy for that difficult to determine tax loss. But that's not an issue here. We know exactly what the tax loss is. We know, in fact, it's included in the tax loss that was attributed to Mr. Jones in this case. And so that... Did you try this case? I did not. Someone from our office did. So he had public defenders? Yes. All the way through? Yes. The tax loss already encompasses this loss from the criminal activity, because it's the same criminal activity. It's the same taxes that he was convicted of evading the payment of. There's no... For that reason, there's no additional deterrence to be had from this. This guideline is included to provide deterrence. It doesn't provide any additional deterrence, because the entirety of the criminal conduct is already encompassed within this. Mr. Jones is not someone who is like an Al Capone or like a Fairchild, which is the case involving prostitution that was cited in the briefing, where they've got a whole bunch of other criminal activity that they're engaging in, and they're not paying their taxes. All of Mr. Jones' criminal activity is related to this constellation of tax offenses here. And so for that reason, the guideline does not support the application of this. And it's fully encompassed within the tax loss in this case. And I might add that with respect to the tax loss, the inclusion of the unpaid trust fund taxes in the tax loss calculation in Mr. Jones' case actually had a meaningful impact on his guidelines. In other words, including this money, which the probation office properly did under the tax loss calculation in the tax loss guideline, resulted in bumping Mr. Jones' tax loss up to another bracket. The tax loss that was calculated based on his improper deductions was around $1.4 million. Adding the tax loss, there's a little bit more, adding the tax loss from the unpaid trust fund taxes bumped that up over the $1.5 million mark, resulting in a two-level increase for him. So this conduct is actually in practical terms accounted for in his guidelines already by increasing his guidelines. Applying the criminal activity guideline in addition to this is really circular. It is counting the same conduct twice when it's already fully encompassed. Now, our position is that this guideline is not ambiguous, and that for the reasons that I've discussed, it is clear that this conduct is not intended to be covered. And for that reason also, the comment defining criminal activity would not be binding on this court. But if this court does find that the guideline is ambiguous, and I think there is a rational way in which the court could find that, but even if it does with respect to the definition of criminal activity here, then it would still be under the rule of lenity in that case. That ambiguity should break in Mr. Jones' favor. I just want to confirm that this wouldn't be double-counted in every case. No. From your perspective, it's double-counted in this case, but it would not necessarily be double-counted in every case. No, it wouldn't be double-counted in every case. Certainly in a case in which you have the sort of mine run Al Capone situation, the Fairchild situation, that's perfectly appropriate, where the criminal activity is completely separate from any tax misconduct. That's not a problem. There's no double-counting implicated there. Even if it was, double-counting is not prohibited unless the guideline is specifically prohibited. Is that correct? That is correct. It's not prohibited unless the guideline is specifically prohibited, but courts can also look at the guidelines and what the intent of the guideline is and whether the conduct is fully encompassed within the other enhancements to the guideline in interpreting how this particular enhancement applies, and that's what we're asking this court to do here. Because Mr. Jones' conduct is already fully encompassed within the tax loss and fully accounted for by the tax loss, the application of income from other criminal activity really doesn't add anything to it. It doesn't add any additional deterrence. It doesn't address the situation that the guideline is intended to reach, as described by the background. Now, ultimately, if the court disagrees with that and finds that it's ambiguous, then we would ask the court to apply the rule of lenity, and I think that's the other way in which the court gets to this issue. What if he had not been convicted or even charged with count two? We would have had the same guidelines, wouldn't we? That's an interesting question, if he had only been convicted. I think that's 72. I think that count one, I will double-check this, but I believe that count one would also have been under 2T1.1. Count one was? It would be under 2T1.1. Right. I think that if the government had presented the count two case at sentencing, then you wouldn't have an argument, but we would have the same guidelines. And here, he was actually convicted of count two, which arguably, if anything, makes it a worse case than that. Well, count two is what they used for the tax evasion, is what they used for the basis of the guidelines. I think that counterfactual is hard to parse out in this case because he actually was convicted of count two, and the government relied so heavily on this in their narrative of what his conduct was. When you look at what their argument ultimately was to the jury, they start out by talking about how he didn't pay these employment taxes and went on from there. And so as a practical matter, looking at the conduct that they have alleged here, this is the same conduct as what they have argued. I see my time is about to expire. Are there any other questions? Thank you very much. Thank you, Your Honor. You have some rebuttal time as well. Mr. Ellenwood. Good afternoon, Your Honor. Todd Ellenwood for the United States. I'd like to start with the first question presented and just briefly address it, and then rely on my briefs. The judge at the sentencing said that this is as blatant criminal conduct as this Court has ever seen. At sentencing, Jones' trial counsel acknowledged the, quote, strong factual record and, quote, ample proof elicited at trial. In my brief, there are multiple categories of willfulness evidence. Any one of them by themselves is enough to support a willfulness finding. Cumulatively, it's a mountain of evidence. And if the Court doesn't have any questions about that, I'll turn to the second question on the enhancement. But he went to trial anyway. Yeah, Your Honor. If I were to, I actually, in preparing for this, I went through, I tried the case. It would take me a while just to recite to you the exhibits that he signed that are what I, as a career prosecutor, rarely see individually. I mean, truly smoking gun documents. Multiple, the statement of financial affairs, the bank records require them to know, not under any consideration for tax purposes, but post-9-11 money laundering provisions, who is the actual beneficial owner. So every bank account had records, and we got them through treaty requests. Beneficial owner declarations, there's a mountain of those. There were multiple loan agreements that involved Mr. Jones' entities that he signed as the guarantor. There's a sale agreement with a person who testified at trial, Mrs. Paganelli, who says, I sold it to Mr. Jones. There are management agreements between him and the offshore, what I call the nominee director. That person has their own know-your-customer duties, so he has documents that are signed by Mr. Jones, and one of them is called a declaration of no involvement in money laundering. He has one of those for every entity. It was a mountain of evidence. But she doesn't contest the sufficiency of the evidence. No, no, no, no, that's right. No, she does contest it. She rests on her breath. Yes. But what about the enhancement that she focused on? So it seems to me that what Jones' counsel is trying to create is some sort of separate analysis for tax crimes that generate income. It's rare that a tax crime is going to generate income. Usually it's the failure to report and pay money over the IRS. That, we're not saying it applies to that situation. A run-of-the-mill income tax case, it's not applicable. So we agree that most failures to pay tax do not independently create income. That was noted in the Kearney decision. That's what Kearney was about. Kearney cites a Ninth Circuit case, Ford, that said that explicitly. And that's because in most cases a taxpayer's failure to pay tax isn't generating income. And if it does generate income, that's an appropriate aggravating circumstance that would justify a higher sentence. You made my argument for me, Your Honor. I think that that's exactly what it is. So when will this apply? And the most common situation is employment tax because it's not just the failure to settle up at the end of the year or April 15th with the IRS. It's actually stealing the money that you have withheld from the employees. One of the most common charges for that is 7202. The guidelines do not have this enhancement under 7202. So if an employment tax case was brought only under 7202, it would not apply. It can apply in situations like here where there's 7201s or 72061s, but filing false tax returns, or in Heard where it was a 371. So here the criminal activity was the embezzlement of the trust fund taxes withheld from the wages of the employees held in trust for the IRS. So to be eligible for this enhancement, there has to be some charge other than 7202 is the underlying criminal activity, but to be proceeding under the guidelines, the charge that the person was convicted of can't be 7202. And another limitation found in the Heard case that we rely upon is that the income must be attributable to the defendant. And I'm wary to get into kind of tax weeds, but in Heard there was discussion about that the money had to be diverted to Heard in order for it to be income. That's because Heard was a Schedule C business, I mean, apologies, a C corporation. A C corporation is a taxable entity. So if he had just left the money in there, he would have been committing the employment tax fraud, but he wouldn't be committing tax fraud or eligible for this enhancement if he had left the money in the business. The business would have paid the taxes on it. We had to prove in order to convict him of tax evasion that he actually pulled the money out for the variety of expenses that he did. We don't have to show that here. It's an S corporation where the money just flows through. So there was some discussion in the briefs about what was said at sentencing, was it left in the corporation, was it left in the business, did we show personal diversions? We didn't need to. As soon as the money is withheld and not paid over, it goes into the business coffers and that money will flow through to him. And as I think Judge Maddox was implying, not to put words in your mouth, Your Honor, but that here there is additional conduct and that's why a lot of these other issues fall by the wayside, something like double counting. This court has said in United States v. Robinson, which is an unpublished decision, at 456 FAPPX 283, page 291, because double counting occurs only when a consideration has been fully accounted for in another sentencing guidelines provision. And here that doesn't apply. The additional bad conduct is the fact that he didn't report the money that he had stolen. And this court in Weiss found this to be the case. Weiss is not about the enhancement. That was not the issue in Weiss. The issue in Weiss was that Weiss was contesting his tax loss. The loss amount included a variety of things. The biggest one was the failure to pay over the employment taxes that he had taken from client companies. That was the biggest number. I think it was $4.1 million. Then on top of that was that he had failed to report that stolen money and that that was a separate offense. So in Weiss, this court said that the sentencing commission views the tax loss to the federal government resulting from the defendant's failure to report illegally obtained income from an underlying tax-related fraud as a separate and distinct harm from such an underlying fraud. It is distinct. It is different. Later in that opinion, on the same page, at page 216, the crucial point is that the underlying offense is complete when a defendant fraudulently diverts income to himself so that when the same defendant fails to report such fraudulently obtained income as income on his federal tax return, a second and distinct offense is committed. I'm trying to think of other situations where this would arise other than employment tax. And one form of tax fraud that's coming down the pike is that out of the efforts to buffer the economy through COVID, there was a refundable credit called the employee retention credit. And so this is money that's affirmatively given. It's not something that you just get to deduct from your taxes. It's money that the IRS is giving you affirmatively. And people abused it, and it was fraud. That could be subject to this enhancement. Somebody files a false tax return claiming the employee retention credit. That is the crime. They also failed to report on their next tax return, the fact that they got X amount of dollars out of the federal government illegally. And I found one case that I did not mention in my brief, but it's the Bront case out of the Ninth Circuit. It's unpublished. It's at 480 FAPPX 450. And there the defendant was convicted of 72061, which is filing a false tax return, and he did the same thing for clients. So that resulted in convictions under 72062. An additional fact was that with one of those false returns he prepared for a client, he stole the refund check. So the refund check was more than $10,000. The court there had the enhancement, and the Ninth Circuit affirmed application of the enhancement there. That's directly the factual or the predicate that counsel is talking about. Oh, is there a case where it's kind of arising out of tax and you do this additional enhancement on it. That one. There isn't a lot of authority directly on the point here. No, there's not. There aren't a lot of tax cases. We're plowing a new furrow. Could you say that again, Your Honor? I said we're plowing a new furrow. When you plow the field. Yes, Your Honor. I think it's pretty close to Heard. I mean, Heard resolved this. Heard is the Fifth Circuit opinion. And it was about a page and a half long. It's pretty narrow. And it goes through the arguments that were made and says that Heard stole from the IRS by withholding in excess of $10,000 in employment taxes in 2003 and not paying the money to the IRS. You know, one other thing I would like to point out is that looking at the background and trying to decipher what it is that was the point of this enhancement, my counsel read the background provisions, but I want to go over it again. It starts out in the background. Failure to report criminally-derived income is included as a factor for deterrent purposes, period. The next sentence, and it doesn't slide into it, the next sentence says, criminally-derived income is generally difficult to establish so that the tax loss in such cases will tend to be substantially understated. I think those are two different things. I don't think the second one is related to the first directly. In looking at the case law, I saw no cases that cited this that said, in this case, it was very easy to figure out how much money the person stole from a Ponzi scheme. Therefore, we will not apply this enhancement to the tax charge. It's part of the background commentary. It says generally difficult. I don't think it is determinative in this case. And other cases have cited that first sentence. Heard said that the provision is included for deterrent purposes. The Third Circuit has said the enhancement is designed to deter and punish tax evaders who fail to report illegally-acquired income. That's the main purpose of this enhancement. That's United States v. Vitale, 159 F. 3rd, 810 at 814. I think you've written a very thorough brief. Do you want to ask my colleagues if they have further questions? No further questions, Judge. We don't have further questions. Thank you, Your Honor. Thank you, Your Honor. Just briefly, the Court mentioned that the generation of income from illegal activity should be treated as an additional aggravating circumstance. But what the background is really getting at, and this is discussed in the Doxy case cited in the briefing, is not this enhancement is not intended to apply because of the criminal activity. It's not correlated to any particular egregiousness of criminal activity. That's why it's the same regardless of what the criminal activity is. Instead, it's intended to be a proxy for the income that we can't determine what it is because it's from criminal activity. It's intended to be an enhancement because it's very hard to determine what somebody's income from ill-gotten gains actually is. And so in that sense, it's already fully encompassed by the tax loss that Mr. Jones was already attributed to Mr. Jones. So in discussing whether double counting is appropriate here, we do generally recognize that if it's fully encompassed, then there is no double counting is not appropriate. And in this case, it is fully encompassed because we know what the tax loss is. And that tax loss, which we know because it's in the paperwork, and the government relies on it, and it's calculated and it's in his pre-sentence report, increases his guidelines and actually does have a meaningful impact on his sentence. The government relies on the Weiss case. Can I just, before you go there, Counselor? Sure. I guess the way that I'm sort of looking at it is that the first place where this is counted is tax loss. In other words, it's accounting for a loss of money to the government. It seems to me that the function of the enhancement that we are now talking about is it's accounting for a gain to the defendant. Do you think that that's an inappropriate way of looking at it? I don't think that that's actually what it's intended to do, Your Honor. I think when you look at what the enhancement said, again, referring to this background provision that we've been back to, but it says, the second sentence, criminally derived income is generally difficult to establish, so the tax loss in such cases will tend to be substantially understated. An enhancement for offenders who violate the tax laws as part of a pattern of criminal activity from which they derive a substantial portion of their income also serves to implement the mandate of the statute. So it really is focused on the tax loss. And that last sentence also suggests that this is really aimed at people who are engaging in separate activity. They're engaging in a pattern of criminal activity of which the tax violation forms a part. Here, for Mr. Jones, the tax violations are the entirety of his criminal activity. That's all there is. And that makes this meaningfully different. With respect to the Weiss case, it's really not about this, any of the issues in this case. Weiss is about grouping. In Weiss, the defendant was arguing about whether or not the ‑‑ he was trying to analogize the loss calculation under 2B1.1 to the loss calculation under ‑‑ or he was trying to distinguish that loss calculation from the loss calculation under 2T1.1. So it didn't address at all the application of criminal activity under subsection B1 here. The government has offered a number of cases and other hypothetical situations in which there might be additional loss or additional criminal activity that's also related to the tax evasion here. But none of those are actually this case. And I think that is really what makes this case meaningfully different, is that we have one victim here. It's the IRS. And that the tax evasion that Mr. Jones was convicted of, the taxes that he was convicted of evading, are the very same taxes that right here the government is also saying his failure to pay is a separate criminal activity. The government agrees that we need a separate criminal activity. There's no dispute about that. But it's not a separate activity. It's not a separate criminal activity here. When the government has argued to the jury that the government must prove the existence of a substantial tax deficiency, and this is simply the amount of employment taxes and trust fund recovery penalties the defendant did not pay. This was an element of this case for the government. And so for these reasons, thank you, Your Honor. Thank you, Your Honor. We will come down and shake hands with counsel. I'm going to ask the courtroom deputy to adjourn court. And I want to thank the courtroom deputy for the fine job that she did. And he's adjourned court. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Robert B. King, Matthew James Maddox